IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH DAVIS, JR.** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:07cv537-LG-JMR** |
| | § | |
| **BELK STORES SERVICES, INC., TIM** | § | |
| **BELK, Chairman, Belk Stores Services,** | § | |
| **Inc., JIM ZELLER, Store Manager,** | § | |
| **Individually, CLUB LIBBY LU, INC., f/k/a** | § | |
| **MCRAE'S STORES SERVICES, INC., and** | § | |
| **BELK DEPARTMENT STORES, LP** | § | **DEFENDANTS** |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
## JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are Defendants' [39] Motion for Summary Judgment and Plaintiff Joseph Davis, Jr.'s [41] *Pro Se* Motion for Summary Judgment with Supporting Notarized Affidavit and Genuine Issues of Material Fact. Davis initiated this action under Section 1983, Title VII, and state tort law for his termination from Belk Department Stores. He argues he was wrongfully terminated, defamed, and intentionally emotionally distressed by Defendants. Defendants argue (1) his claims are time-barred, (2) he failed to exhaust his Title VII claim, (3) his claims are without merit, and (4) he has failed to serve two Defendants.[1] The Court has considered the briefs, record, and relevant legal authority. Davis's motion is denied, and Defendants' motion is granted.

### FACTS AND PROCEDURAL HISTORY

Davis was employed by Belk in its Biloxi, Mississippi store as a part-time sales associate

---

[1] Because the Court finds that the claims should be dismissed on other grounds, it need not consider service of process.

in the men's department. On February 4, 2006, a female co-worker complained to management that he verbally and physically sexually harassed her. After the company investigated the charges, he was terminated in early March.

Davis applied for and was granted unemployment benefits. He then filed a *pro se* complaint in state court, on March 5, 2007. Defendants removed the case to this Court.

## DISCUSSION

STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

SECTION 1983

Davis argues that Defendants acted under color of law and denied him his Constitutional

rights when they terminated him. They maintain that they are not State actors.

To prove Davis's claims under Section 1983, he will have to show, among other things, that Defendants acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party . . . must be a person who may fairly be said to be a state actor.'" *Id.* at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Id.*

"Private individuals generally are not considered . . . state actors. . . . Notwithstanding this limitation, a private individual may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). State action may also be found where the state compels the private party to act, "when the state provides 'significant encouragement, either overt or covert,'" when the private entity is controlled by the State, when the private party performs a public function, or when the private party is so entwined with the State as to make the party a state actor. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).

There is no evidence to indicate that any of these three Defendants was a State actor. It is undisputed that they are private parties and that they did not act jointly with nor perform a public function of any governmental agency. Therefore, Defendants are entitled to judgment as a matter of law on the Section 1983 claims.

TITLE VII

Davis alleges that he was fired because of his race.  Defendants argue he has not exhausted his administrative remedies on this claim.  In the alternative, they assert that he admitted there was no racial discrimination.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008).  For private sector employees, this requires filing a charge with the Equal Employment Opportunity Commission (EEOC).  *Id.*  "Only after administrative efforts terminate may the employee sue the employer in federal court" under Title VII.  *Id.*

Davis testified that he called the EEOC but did not file a charge with them.  He does not provide the Court with the content of that phone call.  Because he has failed to exhaust his administrative remedies, his Title VII claim is dismissed without prejudice.

RETALIATION

Davis also argues that he was fired in retaliation for complaining about an alleged Fair Labor Standards Act violation.  He claims that he complained about overtime pay.  Also, although he was classified as a part-time worker, he says he actually worked full time and did not receive Belk's full time benefit of employer-paid health insurance.  Defendants argue that he failed to raise this claim before now.  Alternatively, they argue this claim is without merit.

This claim does not appear in the Complaint nor Amended Complaint.  Davis does not raise retaliation in his deposition.  He has not requested permission to amend his complaint to add the retaliation claim.  Instead, he raises it in his Motion for Summary Judgment.  Since a responsive pleading has already been filed in this case, Davis may only amend his pleading with

4

Defendants' consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Therefore, the Court finds that retaliation in violation of the Fair Labor Standards Act is not a part of this case.

<u>Wrongful Termination</u>

Defendants argue this claim is time-barred under Mississippi Code Annotated Section 15-1-29. Davis does not respond to this argument.

Defendants have the burden to plead and prove that this action is barred by the statute of limitations. *Hall v. Dillard*, 739 So. 2d 383, 387 (¶19) (Miss. Ct. App. 1999). "[A]n action based on an unwritten contract of employment shall be commenced within one (1) year after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-29 (2008). On the other hand, an action for breach of a written contract of employment is subject to the general three-year statute of limitations. Miss. Code Ann. § 15-1-49 (2008). *See also*, *Levens v. Campbell*, 733 So. 2d 753, 758 (¶15) (Miss. 1999).

Davis does not allege that he had a written contract of employment. There is no proof that the employment relationship between Davis and Defendants was other than an unwritten contract. Therefore, the Court finds that the one-year statute of limitations is applicable.

Davis's personnel records indicate he was terminated on March 2, 2006, the day after the sexual harassment investigation by Belk. Davis signed a claim form with the Mississippi Department of Employment Security (MDES) listing March 2 as his date of termination. Although he would sometimes equivocate as to whether this was the correct date, he said he did not have any reason to believe it was not correct. "I don't see anything on here as I recall on my filling it out as being inaccurate. It looks like it's all accurate. I can't answer no better than that." (Pl.'s Dep. at 99). According to the MDES documents he provides, he "said on 03/02/06

[he] was fired." (Pl.'s Mot. Summ. J. Ex. D at B-00159). He later reiterated this information to MDES. *Id.* at B-00160. Therefore, Davis had until March 2, 2007, to file his wrongful termination claim. This claim was untimely filed on March 5. Defendants are entitled to a dismissal of the wrongful termination claim.

DEFAMATION

Defendants argue that the defamation claim is barred by the statute of limitations, and in the alternative, the statements were privileged. Davis does not respond to this argument.

"All actions for . . . slanderous words concerning the person . . . shall be commenced within one (1) year next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-35 (2008). Davis asserts that he was defamed by Defendants when they terminated him for sexual harassment. This occurred on March 2, 2006. He does not identify nor complain of any such statements after his termination. He did not file his Complaint until March 5, 2007. Therefore, his defamation claim is time-barred. Defendants are entitled to judgment as a matter of law on this claim.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, Davis alleges that Defendants harassed him and intentionally inflicted emotional distress upon him during the investigation, termination, and after. Defendants argue that this claim is, too, barred by the statute of limitations. In the alternative, they argue that this claim is without merit.

I. STATUTE OF LIMITATIONS

The statute of limitations for intentional infliction of emotional distress is one year. *Slaydon v. Hansford*, 830 So. 2d 686, 688 (Miss. 2002). "As a continuing tort, the statute of

limitations does not begin to run until the date of the last injury." *Pierce v. Cook*, 992 So. 2d 612, *11 (¶21) (Miss. 2008) (citing *Smith v. Sneed*, 638 So. 2d 1252, 1255 (Miss. 1994)), *rehearing denied*, 2008 Miss. LEXIS 549 (Miss. Oct. 30, 2008).

> A 'continuing tort' is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. *A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continuing ill effects from an original violation.*

*Pierce*, 992 So. 2d at *13 (¶25) (quoting *Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993)).

For example, in *Pierce*, an ex-husband sued his ex-wife's lover for alienation of affection and intentional infliction of emotional distress. *Pierce*, 992 So. 2d at *1 (¶¶1-2). There was evidence of repeated acts of harassment beyond the disclosing of the affair itself. *Id.* at *14 (¶26). For example, defendant took the ex-wife on a trip to New Orleans, the couple flaunted their affair in front of the Plaintiff at a restaurant in Jackson, and there were tape recordings of other acts of verbal harassment. *Id.* Therefore, the Mississippi Supreme Court held that the limitations period did not run on the intentional infliction claim, until the date of the last such act. *Id.* at *14-15 (¶26).

The acts of harassment claimed by Davis begin with the sexual harassment investigation/termination itself. He also claims that Defendants and their employees have on several occasions banished he and his family out of the store when they come there to shop or pay their bills, despite being invited by Belk to come and receive their Belk rewards. One such occasion was when "Chris . . . pretending to be a manager . . . told me to get out of that store back in November [2007]." (Pl.'s Dep. at 62). "[A]nd it hurt because I had my grand baby with me and my wife. And Chris hollered across the store, 'What are you doing here. You shouldn't

be in here anyway.'" *Id.* at 62-63. Davis was accused of trespassing. On another occasion, he arrived at Belk for Mary Walker's deposition in this case, on April 30, 2008, and was told he was not to be in the store.

Davis testifies there are continuing, unlawful acts of intentional infliction of emotional distress, through April 30, 2008. Therefore, the intentional infliction of emotional distress claim is timely.

II. MERITS

Under Mississippi law, a party may recover for intentional infliction of emotional distress "where there is something about the defendant's conduct which evokes outrage or revulsion." *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 290 (¶20) (Miss. 2007). "The standard is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Id.* at 290-91. "A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (¶24) (Miss. 2001). It will not lie for every insult, indignity, or threat. *Wong v. Stripling*, 700 So. 2d 296, 306 (¶46) (Miss. 1997).

In *Diamondhead Country Club & Prop. Owners Ass'n v. Montjoy*, 820 So. 2d 676, 684 (¶¶22-23) (Miss. Ct. App. 2000), the Mississippi Court of Appeals held that there was no claim for intentional infliction of emotional distress where plaintiff was fired, board members told him they wanted to make sure he did not steal anything, he was escorted out of the building by security, and the employer asked other employees to gather evidence against him. The court held that while this conduct would be upsetting, it was not extreme or outrageous enough to recover damages. *Id.* at 684-85 (¶23).

In *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (¶24) (Miss. Ct. App. 2004), the Mississippi Court of Appeals denied another intentional infliction of emotional distress claim. There, the plaintiff was terminated, called a thief during a meeting and MESC hearing, and subjected to derogatory ethnic remarks. *Id.* This conduct was not considered extreme or outrageous enough to support an actionable claim. *Id.* at (¶25).

Pursuant to *Diamondhead* and *Raiola*, the Court is compelled to find that Davis has not proven his intentional infliction of emotional distress claim. Davis's allegations do not rise to the level of the conduct in those cases, and therefore, as a matter of law are not such that would prove intentional infliction of emotional distress. Defendants are entitled to summary judgment of this claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendants' [39] Motion for Summary Judgment is **GRANTED**. The Title VII claim is dismissed without prejudice. The Section 1983, wrongful termination, defamation, and intentional infliction of emotional distress claims are dismissed with prejudice. A separate judgment will be entered herein in accordance with this Order as required by FED. R. CIV. P. 58.

**IT IS FURTHER ORDERED AND ADJUDGED,** that Plaintiff's [41] Motion for Summary Judgment is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 6th day of January, 2009.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE